UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Harold E. Shaneyfelt, Jr.**

     **v.**                              Case No. 06-cv-263-PB
                                          Opinion No. 2008 DNH 018__
**Commissioner, N.H.**
**Department of Corrections**

## MEMORANDUM AND ORDER

Harold E. Shaneyfelt, Jr. was convicted of three counts of felonious sexual assault.  Shaneyfelt has petitioned this court for a writ of habeas corpus, alleging that: (1) the trial court erred by permitting the state to amend the indictment on the first day of trial; and (2) trial counsel rendered ineffective assistance by failing to object to the prosecution's improper "golden rule" closing argument, failing to object to the prosecution's improper expression of personal belief in Shaneyfelt's guilt during closing arguments, and denying Shaneyfelt the opportunity to participate actively in jury selection.  The government has moved for summary judgment.  For the reasons discussed herein, I grant the government's motion for summary judgment.

## I.   **BACKGROUND**

**A.   The Crime**

On October 3, 1997, at around 5:00 pm, Dawn Young dropped off her 9-year old and 7-year old daughters (respectively, "MYA" and "MYB") at the home of Bill and Betty Bielinski, the girls' grandparents. Dawn's son ("MYC") was already at the Bielinski home. Harold Shaneyfelt arrived a few hours later and began watching movies and playing with MYA, MYB, and MYC on the home's enclosed sun porch. Later that night, after the children had finished playing, MYC went inside and the girls, clad in t-shirts and underwear, got into a sofa bed on the sun porch where they normally slept when visiting the Bielinskis. Shaneyfelt, who was still clothed, crawled into the bed in between the two girls and sexually assaulted them by repeatedly touching their vaginal areas.

**B.   The Indictment and Trial**

The Rockingham County Grand Jury returned an indictment charging Shaneyfelt with sexually assaulting MYA and MYB in violation of N.H. Rev. Stat. Ann. § 632-A:3, III. The indictment charged that Shaneyfelt sexually assaulted MYB by purposely

touching her in "the vaginal area, over the underwear . . . under circumstances that can be reasonably construed as being for the purpose of sexual arousal or gratification."

During jury selection, Shaneyfelt insisted that counsel challenge a potential juror.  Counsel, however, told Shaneyfelt to be quiet and refused to comply with his demand.[1]  The record does not reveal why Shaneyfelt wanted to challenge the juror, and there is no evidence suggesting that he communicated his concern to the court.

After the jury was sworn, but before the trial began, the state moved to amend the indictment as to MYB to strike out the phrase "over the underwear."  The trial court granted this motion over Shaneyfelt's objection.

MYB testified at trial that Shaneyfelt touched her vagina with his hand inside her underwear.  During her police interviews, however, MYB initially denied that Shaneyfelt had done anything inappropriate, and later told a police detective that Shaneyfelt had touched her <u>outside</u>, not inside, her

---

[1] Shaneyfelt did not provide a transcript of the *voir dire*, but did swear to the above factual averments.  Because the government did not provide any contradictory evidence, I rely solely on Shaneyfelt's sworn statement.

underwear.  Shaneyfelt's attorney cross-examined MYB regarding inconsistencies between her trial testimony and her statements to the police.

Shaneyfelt's attorney gave the first closing argument.  He began by noting that "it is at least possible that at the conclusion of all of this, an innocent man could be convicted.  There's nothing that terrifies a defense lawyer more than that."  He then argued that Shaneyfelt's touching had either been inadvertent or entirely fabricated by the girls.  He attacked their credibility by highlighting the lack of detail in MYA's testimony and the inconsistencies in MYB's testimony, which mostly related to collateral facts such as what they had eaten for dinner on the evening of the crime, what movie they had watched, and so on.

The prosecutor began his closing argument with an anecdote about an injury he had suffered while playing basketball.  He remembered certain aspects vividly -- such as going to the hospital and getting x-rays -- but could not remember what clothes he had been wearing or what he had eaten for dinner.  He said:

And why is that? It's . . . the nature of who we are.
It's the nature of how we think . . . .[W]e remember
the big things.  We remember the big happy events. We
remember the weddings.  We remember the graduations.
And we remember the sad things.  We remember the
funerals.  We remember when somebody's mean to us,
really mean to us and hurts us.  And we know about
them.  And we remember facts about them.  But there's a
lot of stuff that goes with it that you don't remember.
And use your common sense and judgment when you're
thinking about that.  And what are the things that you
hold and the memories that you take with you and that
you can recall?  And you're thinking about these things
as adults, but what we're talking about here is two
kids who at the time one just turned seven, . . . and
the other one was nine.  So you use your common sense
as adults to inform your decisions.  But at the same
time, try not to hold them to the same standard as an
adult does.  You have to think about how do kids deal
with things.  How do kids react? And try and use that
as your guide when you're assessing their credibility.
The things about the inconsistencies, about, you know,
who had supper with —— what did you have for supper?
Who pulled out the couch?  Who put in the movie?
Consider that for what you think it's worth.  I'm not
going to tell you to not consider it.  You —— are going
to judge what you think is right and what you think
happened, and I don't presume to tell you anything
about that.

The prosecutor ended his closing by stating:

I think lastly I'll just end with this statement.
[Defense counsel] had indicated that to be scared about
convicting an innocent man, and the thing is is [sic]
that he's not innocent . . . . Don't have a fear of
convicting this guy.  He is guilty of child
molestation.  He molested those girls.  He did it, and
he's guilty.  Return verdicts of guilty on all three
counts, ladies and gentlemen, these girls did only what
we could expect you to do.  He did it.

Although defense counsel objected to another, unrelated aspect of the closing, he objected neither to the basketball injury analogy nor to the discussion of Shaneyfelt's guilt.

The jury found Shaneyfelt guilty on all three counts of felonious sexual assault.

**C.   Direct Appeal and Post-Conviction Proceedings**

Shaneyfelt filed a direct appeal with the New Hampshire Supreme Court, alleging, among other things, that the trial court erred in allowing the government to amend the indictment to delete the statement that Shaneyfelt had assaulted MYB "over the underwear." In rejecting this argument, the court concluded that the amendment was not problematic because it neither altered an element of the charged offense nor otherwise prejudiced Shaneyfelt's defense. State v. Shaneyfelt, No. 2000-636 (N.H. Oct. 25, 2002) (order denying direct appeal) ("NHSC Oct. 25, 2002 Order").

Shaneyfelt later filed a petition for post-conviction relief in the Rockingham County Superior Court, alleging ineffective assistance of counsel. The superior court denied Shaneyfelt's motion on November 20, 2003. Shaneyfelt appealed to the New Hampshire Supreme Court, and on February 11, 2004, the Supreme

Court remanded the case to the superior court for additional
fact-finding.  On remand, the superior court rejected
Shaneyfelt's ineffective assistance claims.  <u>State v. Shaneyfelt</u>,
No. 98-S-782 (N.H. Super. Ct. Dec. 14, 2005) (order denying
motion for postconviction relief) ("N.H. Super. Ct. Dec. 14, 2005
Order").  Shaneyfelt appealed the superior court's ruling to the
New Hampshire Supreme Court, which summarily declined his appeal
on June 30, 2006.

## II.  <u>STANDARD OF REVIEW</u>

I review Shaneyfelt's petition under the standards
established by the Anti-Terrorism and Effective Death Penalty Act
(AEDPA), 28 U.S.C. § 2254.  Under AEDPA, if a state court has
adjudicated the habeas petitioner's claim on the merits, a
federal court may grant relief to the petitioner only if the
state court's adjudication resulted in a decision that "was
contrary to" clearly established federal law, involved an
"unreasonable application" of clearly established federal law, or
was based on an "unreasonable determination of the facts in light
of the evidence presented."  28 U.S.C. § 2254(d).  An application
of law is unreasonable when there is "some increment of

incorrectness beyond error . . . .  The increment need not
necessarily be great, but it must be great enough to make the
decision unreasonable in the independent and objective judgment
of the federal court."  McCambridge v. Hall, 303 F.3d 24, 36 (1st
Cir. 2002).

Where there has been at least one reasoned state court
judgment rejecting a federal claim, the habeas court should look
through later unexplained orders upholding that judgment or
rejecting the same claim and presume that those orders rest upon
the same ground as the prior order.  Ylst v. Nunnemaker, 501 U.S.
797, 803 (1991); see also Phoenix v. Matesanz, 189 F.3d 20, 25
(1st Cir. 1999).  In this case, there are two reasoned state
court judgments that I may look to for guidance.  See NHSC Oct.
25, 2002 Order (denying relief as to amendment of the
indictment); N.H. Super. Ct. Dec. 14, 2005 Order (denying relief
as to ineffective assistance).

If the state court does not expressly apply the federal
standard but resolves the issue under a state law standard that
is at least as favorable to defendants as the federal standard,
the reviewing court "will presume the federal law adjudication to
be subsumed within the state law adjudication."  Teti v. Bender,

507 F.3d 50, 56 (1st Cir. 2007) (quoting <u>McCambridge v. Hall</u>, 303 F.3d 24, 35 (1st Cir. 2002)).

A federal court will presume that the state court's findings of fact are correct.  For this purpose, the term "facts" refers to "basic, primary, or historical facts," such as witness credibility and recitals of external events.  <u>Sanna v. DiPaolo</u>, 265 F.3d 1, 7 (1st Cir. 2001) (quoting <u>Bryson v. Ward</u>, 187 F.3d 1193, 1211 (10th Cir. 1999)).  The habeas petitioner may defeat the presumption of correctness only with clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Ouber v. Guarino</u>, 293 F.3d 19, 27 (1st Cir. 2002).  This presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the findings of fact. <u>Norton v. Spencer</u>, 351 F.3d 1, 6 (1st Cir. 2003) (quoting <u>Sumner v. Mata</u>, 455 U.S. 591, 593 (1982)).

### III.  <u>ANALYSIS</u>

Shaneyfelt first argues that the trial court erred when it permitted the state to amend the indictment on the first day of trial.  He also argues that his trial counsel was constitutionally ineffective because he failed to object to the

prosecutor's improper "golden rule" argument, failed to object to the prosecutor's improper expression of personal belief in Shaneyfelt's guilt, and denied Shaneyfelt the right to participate in jury selection.  I address each argument in turn.

**A.**   <u>**Amendment of the Indictment**</u>

Shaneyfelt argues that the trial court's decision to amend the indictment as to MYB to strike out the phrase "over the underwear" violated his rights to due process and fundamental fairness under the Sixth and Fourteenth Amendments.[2]

The warden has a strong argument that I should review the New Hampshire Supreme Court's denial of Shaneyfelt's claim under AEDPA's deferential standard of review because the state law standard that the New Hampshire Supreme Court used in disposing of Shaneyfelt's claim is at least as protective of Shaneyfelt's rights as the likely federal standard.  <u>Compare</u> <u>State v. French</u>, 146 N.H. 97, 100-01( 2001) and <u>United States v. Fornia-Castillo</u>, 408 F.3d 52, 66 (1st Cir. 2005).  I need not resolve Shaneyfelt's

---

[2] The government argues that Shaneyfelt's federal claim is procedurally barred because he did not preserve the claim at the trial court level and failed to fully brief it in his direct appeal.  Because I deny Shaneyfelt's petition on the merits, I need not address this argument.  <u>See</u> 28 U.S.C. § 2254(b)(2).

claim on this basis, however, because it cannot survive even under a *de novo* standard of review.

The United States Supreme Court has held that an actual or constructive amendment to a federal indictment that broadens an element of the charged offense is a per se ground for reversal under the Fifth Amendment's Grand Jury Clause.  <u>Stirone v. United States</u>, 361 U.S. 212, 215-16 (1960); <u>see also</u> <u>United States v. Miller</u>, 471 U.S. 130, 138-45 (1985) (an amendment that merely narrows the grounds on which the case will be tried is not improper).  The First Circuit has further explained that even if the indictment is not impermissibly amended in that way, the Grand Jury Clause entitles a defendant to relief if a variance between the indictment returned by the grand jury and the evidence produced at trial has caused unfair prejudice to the defendant.  <u>United States v. Fornia-Castillo</u>, 408 F.3d 52, 66 (1st Cir. 2005).

The United States Supreme Court has not yet determined whether the exacting standards for improper amendments and variances that apply to federal indictments under the Fifth Amendment's Grand Jury Clause should also apply to amendments to state indictments that are challenged under the Sixth and

-11-

Fourteenth Amendments.  Haines v. Risley, 412 F.3d 285, 291 (1st

Cir. 2005) (citing Apprendi v. New Jersey, 530 U.S. 466, 499

(2000)), cert. denied, 546 U.S. 1077 (2005).  Faced with this gap

in the law, at least two courts have applied the Stirone

analytical framework to state prosecutions under a Sixth

Amendment fair notice theory.  See Hunter v. New Mexico, 916 F.2d

595, 598 (10th Cir. 1990) (per curiam); Gray v. Raines, 662 F.2d

569, 572 (9th Cir. 1981).  Other courts limit the Sixth Amendment

issue by asking only whether the defendant was given notice and

an opportunity to respond to the charges -- an easier standard

for the government to meet.  See, e.g., Wilson v. Lindler, 995

F.2d 1256, 1264 (4th Cir. 1993) (Widener, J., dissenting),

adopted on reh'g by 8 F.3d 173, 175 (4th Cir. 1993) (en banc)

(refusing to conduct a Stirone analysis, and instead defining the

Sixth Amendment standard as being whether the defendant was given

notice and an opportunity to respond).  The First Circuit has not

yet decided which standard to adopt.  Haines, 412 F.3d at 291

(describing the circuit split but not taking a position).  In

analyzing Shaneyfelt's claim, I assume without deciding that he

is entitled to the more protective Stirone standard.

Reviewing Shaneyfelt's claim *de novo*, I agree with the New Hampshire Supreme Court that the amendment at issue was not per se improper because it did not alter an element of the crime with which Shaneyfelt had been charged.  The indictment (both originally and as amended) charged Shaneyfelt under N.H. Rev. Stat. Ann. § 632-A:3 III, which makes it a crime when a person "[e]ngages in sexual contact with a person other than his legal spouse who is under 13 years of age."  The term 'sexual conduct' is defined as "the intentional touching whether directly, through clothing, or otherwise, of the victim's or actor's sexual or intimate parts, including breasts and buttocks" if the conduct "can be reasonably construed as being for the purpose of sexual arousal or gratification."  N.H. Rev. Stat. Ann. § 632-A:2 IV; see also State v. Dixon, 144 N.H. 273, 283-84 (1999) (discussing breadth of term "touch" in the statute as a whole and drawing no distinction between touching underneath clothing and touching through clothing).  Under the terms of the statute, then, when Shaneyfelt touched MYB's vaginal area for the purpose of sexual arousal, his touch qualified as "sexual contact" regardless of whether he touched MYB over or under her underwear.  Thus, the court did not expand an element of the offense by striking the

-13-

phrase "over the underwear" from the indictment.

Shaneyfelt has also failed to present a persuasive argument that he was unfairly prejudiced by the amendment.  As the New Hampshire Supreme Court noted, Shaneyfelt did not request a continuance.  Nor does it appear from the record that the amendment interfered with defense counsel's ability to cross-examine MYB or otherwise mount a defense.  Accordingly, Shaneyfelt was not unfairly prejudiced by the amendment.

**B.**   **Ineffective Assistance**

Shaneyfelt argues that his trial counsel provided constitutionally ineffective assistance by: (1) failing to object when the prosecutor made an improper "golden rule" argument during his closing argument; (2) failing to object when the prosecutor improperly expressed his personal belief in Shaneyfelt's guilt during his closing argument; and (3) failing to sufficiently involve Shaneyfelt in the jury selection process.

An ineffective assistance of counsel claim requires both deficient performance and prejudice.  Sleeper v. Spencer, __ F.3d __, 2007 WL 4248494, at *5 (1st Cir. Dec. 5, 2007) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

To establish that counsel's performance was deficient, a defendant must show that counsel's performance fell below an objective standard of reasonableness under the circumstances. Sleeper, 2007 WL 4248494, at *5.  This review is highly deferential, making every effort to "eliminate the distorting effects of hindsight."  Id. (quoting Strickland, 466 U.S. at 689).  Counsel has "wide latitude in deciding how best to represent a client," Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003), and benefits from a strong presumption that he or she rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions. Strickland, 466 U.S. at 690.

To establish prejudice, the defendant must show that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different.  Sleeper, 2007 WL 4248494, at *5.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id. (citing Strickland, 466 U.S. at 694).

If counsel's actions did not prejudice the defendant, the court may dispose of the ineffective assistance claim with a prejudice analysis alone.  Strickland, 466 U.S. at 697 ("If it is

-15-

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed").  Where appropriate, I do so here.

### 1.  <u>Golden Rule Argument</u>

Shaneyfelt argues that the prosecutor made an improper "golden rule" argument during his closing, and that Shaneyfelt's trial counsel provided ineffective assistance when he did not object to the alleged "golden rule" argument.  A "golden rule" argument is one that improperly asks the jurors to put themselves in the shoes of one of the parties.  <u>See</u> <u>United States v. Abreu</u>, 952 F.2d 1458, 1471 (1st Cir. 1992); <u>Walton v. City of Manchester</u>, 140 N.H. 403, 406 (1995).  Such an argument is inappropriate because it "improperly 'encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'"  <u>United States v. Moreno</u>, 947 F.2d 7, 8 (1st Cir. 1991) (quoting <u>Forrestal v. Magendantz</u>, 848 F.2d 303, 309 (1st Cir. 1988)).

Shaneyfelt alleges that the prosecutor made a golden rule argument at the beginning of his closing argument, when he transitioned from talking about his memories of his basketball

injury to the memories of the victims.  The prosecutor urged the jurors to "use your common sense and judgment when you're thinking about that" and to consider "what are the things that you hold and the memories that you take with you and that you can recall?" when evaluating whether the gaps in the victims' memories affected their credibility.

The state court reasonably decided that this was not an improper golden rule argument because the prosecutor urged the jurors to use their common sense understanding of how memory operates in judging the credibility of the victims' testimony, rather than asking them to depart from neutrality or identify emotionally with the victims.  See United States v. Kirvan, 997 F.2d 963, 964 (1st Cir. 1993) ("[i]n this situation, the invitation is not an improper appeal to the jury to base its decision on sympathy for the victim but rather a means of asking the jury to reconstruct the situation in order to decide whether a witness' testimony is plausible"); United States v. Abreu, 952 F.2d 1458, 1471 (1st Cir. 1992) (prosecutor did not invoke the golden rule argument when he "simply called on the jury to employ its 'collective common sense' in evaluating the evidence and to draw reasonable inferences therefrom").  Because, as the state

court reasonably concluded, the prosecutor's argument was not an improper golden rule argument, an objection by trial counsel would have been futile.  Thus, Shaneyfelt was not prejudiced by counsel's performance and the state court acted reasonably in dismissing his ineffective assistance claim.

### 2.  Prosecutor's Personal Belief in Shaneyfelt's Guilt

Shaneyfelt next argues that his counsel was ineffective because he failed to object to the prosecutor's improper expression of personal belief in Shaneyfelt's guilt during his closing.

The allegedly improper expression took place at the end of the prosecutor's closing argument, when he urged:

> I think lastly I'll just end with this statement.
> [Defense counsel] had indicated that to be scared about
> convicting an innocent man, and the thing is is [sic]
> that he's not innocent . . . . Don't have a fear of
> convicting this guy.  He is guilty of child
> molestation.  He molested those girls.  He did it, and
> he's guilty.  Return verdicts of guilty on all three
> counts, ladies and gentlemen, these girls did only what
> we could expect you to do.  He did it.

The meaning of the statement is ambiguous.  Although there is some risk that the jury could interpret it as an expression of personal belief in Shaneyfelt's guilt, the prosecutor did not clearly frame it as a statement of belief by prefacing it with a

-18-

statement such as "I feel," "I think," or "I believe."  Based on this ambiguity, the state court found that the prosecutor's statement "can be most reasonably interpreted as being what the evidence showed, at least in the mind of the prosecutor.  It is no different than defense counsel suggested in his closing that the defendant was innocent and should be acquitted."  N.H. Super. Ct. Dec. 14, 2005 Order, at 5.  This was not an unreasonable finding to make.  See United States v. Smith, 982 F.2d 681, 684– 85 (1st Cir. 1993) ("The prejudice from the errant statements in the prosecutor's closing argument was mitigated somewhat by their context and ambiguity . . . . Viewed in context, these ambiguous statements were not so egregious that they seriously affected the fairness, integrity, or public reputation of judicial proceedings" (internal quotations omitted)).  Moreover, even if the trial court might have sustained an objection to the prosecutor's statement, it is not ineffective assistance for counsel to refrain from raising every technically possible objection.  See Knight v. Spencer, 447 F.3d 6, 16 (1st Cir. 2006) ("[Defense] counsel could not have rendered ineffective assistance in failing to object to alleged errors of state evidentiary law that were either non-prejudicial or

-19-

nonexistent.").  Indeed, counsel's decision to refrain from
objecting may well have been a sound strategic decision in the
particular circumstances.  When the prosecutor reached this
section of his closing, defense counsel had already interrupted
the prosecutor's closing statement once to object to the
prosecutor's discussion of unindicted allegations of digital
penetration –– which caused a bench conference to take place in
the middle of the prosecutor's closing.  Raising another mid-
argument objection, particularly if the objection were overruled,
could well have hurt Shaneyfelt in the eyes of the jury more than
any minimal help it might have provided.[3]

### 3.  **Jury Selection**

Shaneyfelt's last argument is that his trial counsel
provided ineffective assistance when he denied Shaneyfelt the
opportunity to participate in jury selection.  Shaneyfelt avers
that he disagreed with some of counsel's decisions during *voir*

---

[3] The state court found that the statement was an isolated
remark in the context of the closing as a whole, and any possible
prejudicial effect was mitigated by the court's multiple
admonitions to the jury that the statements made by lawyers in
their openings and closings are not evidence.  N.H. Super. Ct.
Dec. 14, 2005 Order, at 5.  This was not an unreasonable
determination of the facts, and supports the notion that the
prosecutor's statement caused no real prejudice to Shaneyfelt.

*dire*, but counsel told him to "be quiet" after Shaneyfelt repeatedly insisted that counsel challenge a particular juror. Shaneyfelt has not made any specific allegations suggesting that any of the jurors should have been dismissed for cause.  Instead, he apparently rests his ineffective assistance claim on the idea that counsel should have followed Shaneyfelt's suggestions regarding how to exercise his peremptory challenges.

The state court held, "[w]ithout any specific information to suggest that this particular juror was somehow biased against the defendant, the Court cannot conclude that defense counsel's handling of the matter was prejudicial to the defendant."  N.H. Super. Ct. Dec. 14, 2005 Order, at 5.  This was a reasonable application of the law, particularly since the record remains just as undeveloped now as it was before the state court. Although a client's input may be helpful, an attorney's decisions on how to exercise peremptory challenges are core strategic decisions, informed by the attorney's expertise and experience, and such decisions deserve considerable deference.  See, e.g., Gardner v. Ozmint, ___ F.3d ___, 2007 WL 4414821, at *4 (4th Cir. Dec. 19, 2007) (finding that counsel's decision not to peremptorily challenge a juror who admitted she was not "100

percent" open-minded was not ineffective); Cummings v. Sirmons, 506 F.3d 1211, 1228 (10th Cir. 2007) (finding that counsel's *voir dire* was not ineffective where defendant "did not identify what questions his trial counsel allegedly should have asked of the potential jurors, nor did he identify which jurors should allegedly have been stricken from the panel"); Keith v. Mitchell, 455 F.3d 662, 676-77 (6th Cir. 2006) (finding that counsel's *voir dire* was not ineffective because counsel's unusual focus on jurors' religious beliefs was part of an objectively reasonable strategy and his failure to probe the jury's willingness to sentence a capital defendant to something less than death did not prejudice the defendant), cert. denied, 127 S. Ct. 1881 (2007); Hughes v. United States, 258 F.3d 453, 457 (6th Cir. 2001) ("Counsel is . . . accorded particular deference when conducting *voir dire*.  An attorney's actions during *voir dire* are considered to be matters of trial strategy."); United States v. Quintero-Barraza, 78 F.3d 1344, 1349 (9th Cir. 1995) (deferring to counsel's strategic decision not to strike a potential juror who believed that "one is guilty before proven innocent" and stated that it would be "difficult" for him to be impartial).

Shaneyfelt has failed to demonstrate  that the state court's deference to trial counsel's judgment was contrary to or an unreasonable application of clearly-established federal law. Moreover, Shaneyfelt has failed to show how counsel's decision not to follow his advice was prejudicial.  See Davis v. Woodford, 384 F.3d 628, 643 (9th Cir. 2004) ("Establishing Strickland prejudice in the context of juror selection requires a showing that, as a result of trial counsel's failure to exercise peremptory challenges, the jury panel contained at least one juror who was biased").

## IV.  CONCLUSION

For the foregoing reasons, the government's motion for summary judgment (Doc. No. 16) is granted.  The clerk is directed to enter judgment accordingly.

SO ORDERED.


                                    /s/Paul Barbadoro
                                    Paul Barbadoro
                                    United States District Judge
January 28, 2008

cc:  Harold Shaneyfelt, Jr., pro se
     Susan P. McGinnis, Esq.